UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MONTEFIORE MEDICAL CENTER,                  :
                                            :
                  **Plaintiffs,**           :
                                            :
             - against -                  :     **09 Civ. 3096 (HB)**
                                            :
**TEAMSTERS LOCAL 272, FRED ALSTON** in his :
capacity as President of **TEAMSTERS LOCAL 272,** :     **OPINION & ORDER**
**LOCAL 272 WELFARE FUND,** and **MARK**    :
**GOODMAN** in his capacity as Fund Manager of :
**LOCAL 272 WELFARE FUND,**                 :
                                            :
                  **Defendants.**           :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

        Plaintiff Montefiore Medical Center ("Montefiore" or the "Hospital") initially brought this action in New York Supreme Court, Bronx County, against Defendants Teamsters Local 272 (the "Union"), the Local 272 Welfare Fund (the "Fund"), and Fred Alston and Mark Goodman, in their capacities as President of the Union and Manager of the Fund, respectively (collectively, "Defendants"), seeking payment for medical care services provided to the Union's members. On its face, Montefiore's Complaint alleges claims for breach of express or implied contract between the Hospital and the Fund, unjust enrichment, and breach of the Collective Bargaining Agreement (the "CBA") between the Union and its members under a third-party beneficiary theory. Defendants timely removed the action to this Court. Montefiore now moves to voluntarily dismiss its third and fourth causes of action that sound in breach of the CBA pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure and to remand the remaining causes of action to the state court. Defendants oppose remand and cross-move to dismiss the third and fourth causes of action with prejudice and for costs. For the reasons set forth below, Montefiore's motion to voluntarily dismiss the third and fourth causes of action is granted, its motion to remand is denied, and Defendants' cross-motion to dismiss is denied as moot.

## I. FACTUAL BACKGROUND

        This action arises out of Montefiore's submission of claim forms to the Union and the Fund for payment for medical services rendered to Fund members and participants, and the Fund's alleged non-payment (in full or in part) for those services. The subject claims relate to

1

hospitalization and related services; Montefiore alleges that it is owed upwards of $1 million for such services.

Montefiore is a not-for-profit hospital located in the Bronx, New York. The Union represents employees of parking garage facilities located in the New York metropolitan area and has entered into various CBA's with employers. The employers contribute to the Fund and the Fund administers an employee welfare benefit plan (the "Plan") that provides medical benefits to employees. Pursuant to the Plan, the Fund receives claims for medical benefits from, and on behalf of, participants or beneficiaries of the Fund and the Fund pays benefits to the participants or beneficiaries, or in appropriate circumstances, directly to health care providers.

From approximately April 2003 through January 1, 2007, the Fund provided healthcare benefits to its members through a contractual relationship with Horizon Healthcare of New York, Inc. ("Horizon"), which is a Preferred Provider Organization ("PPO"). After January 1, 2007, the Fund had a similar agreement with MagnaCare Administrative Services LLC ("MagnaCare"), another PPO. Through these agreements, the Fund's members were given access to a network of healthcare providers. Montefiore was a member of both Horizon's and MagnaCare's network during the relevant time periods. Pursuant to Network Hospital Agreements ("NHA's") with the PPO's, Montefiore provided healthcare services to members of the Fund and charged the Fund agreed-upon rates for its services, which rates typically are established at a discount from Montefiore's customary rates. In exchange, the Fund encourages its members to obtain healthcare services at in-network providers, such as Montefiore. Members who receive care at an in-network provider such as Montefiore pay nothing out-of-pocket other than a modest co-pay, and the Fund makes payment directly to the network providers. However, Montefiore's contract with MagnaCare explicitly provides that if it does not receive payment from the Fund, it is entitled to seek payment directly from the member or beneficiary who received its services.

In this case, Montefiore provided health care services to certain participants and beneficiaries of the Fund and submitted claims for payment to the Fund. Pursuant to the Plan, the Fund requires that it receive claims for payment for services on a uniform billing form called a UB-04 or UB-92. Among other provisions, the UB-04 claim form contains a space for the provider to certify that it has an assignment of benefits from the patient for that claim. Each of the claim forms that Montefiore provided to the Fund as the basis of its claims for payment in this case contain a "Y" for "Yes" in the box certifying that it had received an assignment of benefits from the patient. The Hospital alleges that the Fund has failed to pay these claims, in whole or in

2

part, and that it is owed nearly $1 million.  The Fund argues that many claim forms were rejected for reasons that arise under the terms of the Plan – to wit, claims were denied because the services were not covered under the Plan, the patient was not an eligible person under the Plan, or certain other actions were not taken as required under the Plan.

Montefiore initially filed this action in New York Supreme Court, Bronx County on March 10, 2009.  Defendants timely removed the action to this Court on March 31, 2009 alleging that the first and second causes of action fall within the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), and are therefore completely preempted by ERISA; Defendants further alleged that the third and fourth causes of action were completely preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Defendants then filed their answer on April 15, 2009.  Plaintiffs now move to dismiss voluntarily their third and fourth causes of action and to remand the remaining causes of action to New York Supreme Court, Bronx County.

## II. DISCUSSION

### A.    Motion to Dismiss the Third and Fourth Causes of Action

Preliminarily, the Court must address Montefiore's voluntary dismissal of its third and fourth claims for breach of the CBA pursuant to Rule 41(a)(2).  Under that Rule, "an action may be dismissed at the plaintiff's request only by court order on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  Here, Montefiore seeks to withdraw both of its claims that assert a breach of contract between the Union and its members based on its determination that "it would not be a judicious use of resources to pursue these third party beneficiary claims, both for reasons of available proof, and in light of the preemption issues they present."  Declaration of John G. Martin ("Martin Decl.") ¶ 8.  Additionally, Plaintiffs note that the relief sought in the third and fourth causes of action is duplicative of the relief sought in the other claims brought against Defendants and would therefore be "an unwise use of resources."  This Court grants Montefiore's request that the third and fourth causes of action be withdrawn from this action, and those causes of action are hereby dismissed without prejudice pursuant to Rule 41(a)(2).

### B.    Motion to Remand

The central issue before the Court is whether Montefiore's first and second causes of action, although styled as common law claims for breach of contract and unjust enrichment, are completely preempted by ERISA's civil enforcement provision and thus invoke federal subject

3

matter jurisdiction sufficient for removal from the state court.  I find that they do, and that this action was properly removed to this Court.

### 1. Preemptive Scope of ERISA

ERISA was enacted to "protect . . . participants in employee benefit plans and their beneficiaries" by establishing a national regulation of such plans and by "providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  As the Supreme Court and the Second Circuit have noted, "[t]he purpose of ERISA preemption is to ensure that all covered benefit plans will be governed by unified federal law." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987).  Thus, the preemption provisions of ERISA have been found to be "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'"  *Pilot*, 481 U.S. at 45-46 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).  As the legislative history of ERISA makes clear, "[t]he House and Senate sponsors emphasized both the breadth and importance of the pre-emption provisions," *id.* at 46, and noted that the "reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans" was ERISA's "crowning achievement," *see* 120 Cong. Rec. 29197 (1974) (statement of Rep. Dent).  *See also* 120 Cong. Rec. 29197 at 29933 ("It should be stressed that . . . the substantive and enforcement provisions [of ERISA] are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. *This principle is intended to apply in its broadest sense* . . . .") (statement of Sen. Williams) (emphasis added).  Indeed, Senator Javits, who dedicated the better part of ten years at the end of his career to the crafting and enactment of ERISA, noted that "the emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required – but for certain exceptions – the displacement of State action in the field of private employee benefit programs."  120 Cong. Rec. 29942 (statement of Sen. Javits).

This case specifically concerns the preemptive force of ERISA's civil enforcement provision, § 502(a), which provides, among other things, for the recovery of benefits due to a participant or beneficiary under the terms of an ERISA plan.  *See* 29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has recently recognized that § 502(a) "is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for regulation of

insurance benefit plans." *Davila*, 542 U.S. at 208; *Pilot*, 481 U.S. at 53 ("The civil enforcement scheme of § 502(a) is one of the essential tools for accomplishing the stated purposes of ERISA."). The civil enforcement provision of § 502(a) is also viewed as an exclusive remedy for the redress of certain violations that fall within its scope. *See Pilot* 481 U.S. at 54 ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 148 (2d Cir. 2005) (noting "ERISA's comprehensive civil enforcement mechanisms and a legislative history 'fully confirming' that ERISA's remedies were meant to be exclusive") (quoting *Pilot*, 481 U.S. at 54).

### 2. Removal and Complete Preemption Under ERISA § 502(a)

Against this backdrop, Montefiore argues that, as the master of its own complaint, it has crafted its claims for the payment not as claims to collect benefits under the terms of the Plan, but pursuant to the separate contractual relationship between Montefiore and the Fund. The Fund, on the other hand, argues that Montefiore's claims are completely preempted by ERISA's civil enforcement provision and therefore invokes federal subject matter jurisdiction sufficient for removal to this Court.

A civil action filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim. *See* 28 U.S.C. § 1441(a). In this case, removal jurisdiction is premised on federal question subject matter jurisdiction – that is, notwithstanding the fact that the Complaint on its face brings claims for breach of contract and unjust enrichment, the Fund contends that the claims in essence sound in ERISA and thus invoke this Court's federal question jurisdiction. *See id.* § 1441(b). The party that seeks to remove a civil action to federal court bears the burden to show that removal is proper. *California Public Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2006). Generally, the removal statute is to be narrowly construed, and "out of respect for the limited jurisdiction of the federal courts and the rights of the states, we must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, one corollary to the well-pleaded complaint rule is

5

the doctrine of complete preemption, which provides that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Thus, "when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." *Davila*, 542 U.S. at 207.[1]

In the specific context of ERISA, the Supreme Court has found that the civil enforcement provision, § 502(a), "is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 208 (quoting *Metropolitan Life*, 481 U.S. at 65-66). Accordingly, the *Davila* Court held that "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 209. In other words, any state law claim that arises "within the scope of the civil enforcement provisions of § 502(a) are removable to federal court." *Id.* To determine whether a claim arises "within the scope" of § 502(a), the *Davila* Court instructed that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA." *Id.* at 210. Thus, the Supreme Court in *Davila* established a two-pronged analysis to determine whether a claim is "within the scope" of § 502(a): (1) the plaintiff must have been able to bring the claim under ERISA's civil enforcement provisions (*i.e.*, the plaintiff must have standing under ERISA) and (2) there must be no duty independent of ERISA that is implicated in the plaintiff's claim. *See id.* A removing party must show that both prongs of the *Davila* analysis have been met to prevent remand. *See NYU Hosps. Ctr.-Tisch v. Local 348 Health & Welfare Fund*, No. 04 Civ. 6937 (AKH), 2005 WL 53261, at *3 (S.D.N.Y.

---

[1] Complete preemption is, of course, an analysis separate and apart from conflict preemption, which arises under the broad preemption provision in ERISA § 514, 29 U.S.C. § 1144. That provision gives rise to a federal defense of conflict preemption, which is not a basis for removal and is not an issue that is relevant here. *See Caterpillar*, 482 U.S. at 383 (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12 (1983)) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."); *see also Metropolitan Life*, 481 U.S. at 63. Rather, only complete preemption is a basis for removal; conflict preemption may be raised as an affirmative defense and may be considered along with the merits of a claim by any court, state or federal, that has jurisdiction over the action. For a recent explication of the delineation between conflict preemption and complete preemption, see *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-46 (9th Cir. 2009).

Jan 7, 2005). Here, the Fund maintains that Montefiore's first and second causes of action are completely preempted under *Davila* because the Hospital has standing to bring an ERISA claim pursuant to the assignments of benefits it received from the Fund's members, and that the essence of the first and second causes of action are to collect benefits under the Plan such that no duty independent of ERISA exists. I agree.

### (a) *Davila* Prong 1: Standing

The civil enforcement of ERISA provides that "[a] civil action may be brought – (1) by a participant or beneficiary – . . . (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[2] 29 U.S.C. § 1132(a)(1)(B). The Supreme Court and Second Circuit have both explicitly found that § 502(a) is to be narrowly construed to permit only the enumerated parties to sue directly for relief. *See Franchise Tax Bd.*, 463 U.S. at 27; *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991). However, the Second Circuit has "carv[ed] out a narrow exception to the ERISA standing requirements" to grant standing "to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. General Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001) (citing *I.V. Servs. of Am. v. Trustees of Am. Consulting Eng'rs Council Ins. Trust Fund*, 236 F.3d 114, 117 n.2 (2d Cir. 1998)).

Here, the Fund has presented evidence of the assignment of benefits from patients to Montefiore that would entitle the latter to payment directly from the Fund. Of course, the mere existence of a purported assignment of benefits is not dispositive of the standing inquiry; rather, the Court must go on to determine whether Montefiore seeks to enforce the patients' rights – *i.e.*, whether by asserting its claims against the Fund, Montefiore seeks to stand in the participants' and beneficiaries' shoes to assert their entitlement to benefits directly from the Fund. *See, e.g.*, *Memorial Hermann Hosp. Sys. v. Aetna Health Inc.*, No. H-07-00828, 2007 WL 1701901, at *4 (S.D. Tex. June 11, 2007) ("[T]he mere fact of an assignment does not result in complete preemption of the plaintiff's claim if it asserts a cause of action outside its right to recover as an assignee."). Here, contrary to Montefiore's contentions, the Hospital seeks to recover payment for services that the Fund's members received, and were only entitled to, under the Plan. It does not

---

[2] A "participant" is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization or whose beneficiaries may be eligible to receive such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8).

seek to enforce a separate agreement to which the members are not parties, *see Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999), but rather for payments based on the distribution of benefits. Accordingly, Montefiore attempts to stand in the Fund's members' shoes to enforce their rights to benefits – *i.e.*, payment for healthcare benefits provided by the Fund, which is an area that is "exclusively a federal concern." *See Pilot*, 481 U.S. at 46.

Montefiore makes numerous arguments in an attempt to avoid this result, but these essentially amount to a single premise: that is, Montefiore argues that because it was an in-network provider, the purported assignments designated on the UB-04 forms are ineffectual to assign any real Plan benefits to the Hospital. Put another way, Montefiore argues that because participants and beneficiaries need not pay for benefits out-of-pocket when they are treated by an in-network healthcare provider, they had already received all the benefits to which they were entitled under the Plan – *i.e.*, healthcare at no cost. Thus, Montefiore argues, if the patients had no right to reimbursement, then Montefiore cannot bring a claim for payment on their behalf, and thus such claims are brought on Montefiore's own behalf pursuant to its contract rights. It is this in-network classification that Montefiore maintains is "the distinction with all the difference." I do not quite share the Hospital's view in that regard. The position does have some merit, and the Second Circuit has recently intimated that it might come out that way if it were presented with facts such as those at issue here. That is, the Second Circuit, in a case that did not involve removal, complete preemption or standing under the civil enforcement provisions of ERISA, stated in dicta that "[w]here the patient receives services from a participating provider, . . . it is not clear that the patient has anything to assign because the patient is entitled only to healthcare at no cost, not reimbursement. If the participant or beneficiary has no right to payment to assign to the participating provider, it is doubtful that the 'narrow exception' [for healthcare providers] to ERISA's otherwise stringent standing requirement would apply." *Sewell v. 1199 Nat'l Benefits Fund for Health & Human Servs.*, 187 Fed. Appx. 36, 39 n.1 (2d Cir. 2006). However, *Sewell* is an unpublished opinion that is not on all-fours with this case, and, although potentially instructive, it is not binding on the outcome of this case.[3] Here, I find that because the services rendered were provided pursuant to the Plan, and because there would be no right to payment without the

---

[3] The existence of the potentially instructive analysis in *Sewell*, as well as various other authorities outside this Circuit, on the role of assignments in the first prong of the *Davila* analysis, prompt this Court to conclude that this issue may be appropriate for certification for interlocutory appeal *sua sponte*, as discussed in further detail below.

existence of the Plan, Montefiore has standing as an assignee of the Plan's participants and beneficiaries to bring a claim under ERISA.[4] Accordingly, the first prong of the *Davila* analysis is satisfied.

### (b)  *Davila* Prong 2: Independent Legal Duty

Under the second prong of the *Davila* test, a court must look to whether interpretation or application of the terms and scope of the Plan form an "essential part" of the plaintiff's claims. *See, e.g.*, *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004). Specifically, numerous courts have found that where the plaintiff's claim for payment is based on its *right* to payment, as opposed to the *amount* of payment, there is no independent duty and complete preemption is proper. *See id.* ("Were coverage and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the Hospital's claims."); *Weisenthal v. United Health Care Ins. Co. of N.Y.*, Nos. 07 Civ. 1175, 0945 (LAP), 2007 WL 4292039, at *6 (S.D.N.Y. Nov. 29, 2007) (finding no independent legal duty where "[a]t bottom, each claim seeks damages for Defendants' decision not to cover certain . . . procedures performed by Plaintiffs"); *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, No. H-05-4389, 2006 U.S. Dist. LEXIS 39268, at *25 (S.D. Tex. June 13, 2006) ("Because the dispute is not the applicable *rate* of payment, which the plaintiff maintains is set forth in the managed-care contract but rather whether the *services* themselves were usual, customary, reasonable, medically necessary, or otherwise 'covered' under the ERISA Plan, the claim is dependent on the Plan and completely preempted by ERISA.") (emphasis in original, alterations omitted). In this case, the Fund refused payment on at least some, if not all, of Montefiore's claims because certain services were not covered by the Plan, patients were not eligible under the Plan, or Montefiore neglected to follow procedures as set forth in the Plan. Thus, Montefiore's claims for payment in its first and second causes of action are inextricably intertwined with the interpretation and application of the terms of the Plan. Accordingly, there is no independent duty at play in these claims.

*     *     *

As the Fund has shown that both prongs of the *Davila* analysis are satisfied here, I find that Montefiore's first and second causes of action are completely preempted by ERISA's civil

---

[4] This conclusion is bolstered by the express provision in Montefiore's agreement with MagnaCare that permitted Montefiore to obtain payment directly from patients if it did not receive payment from the Fund. In that instance, the members certainly would be entitled to further benefits – *i.e.*, reimbursement from the Fund for its healthcare expense.

enforcement provision and therefore removal was proper.  Consequently, Montefiore's motion to remand is denied.  However, the Court *sua sponte* certifies this Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996) (accepting interlocutory appeal certified by district court *sua sponte*); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007) (same); *see also United States v. Stanley*, 483 U.S. 669, 673 (1987).  Although in general the denial of a motion to remand is not the proper subject of an interlocutory appeal, *see MTBE Prods. Liab. Litig.*, 488 F.3d at 121, in certain circumstances an interlocutory appeal on, for instance, the question of whether a state law claim is completely preempted by ERISA is appropriate.  *See Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) (accepting interlocutory appeal on issue of whether state-law claims were completely preempted under ERISA); *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366 (4th Cir. 2003) (same).  Here, due to conflicting authorities, juxtaposed with the clear intent of the statute, and because the Second Circuit has not yet determined whether an in-network provider such as Montefiore has standing under ERISA, an immediate appeal from my order may materially advance the ultimate resolution of this litigation.  *See* 28 U.S.C. § 1292(b).  This is particularly so where, as here, the governing issue is subject matter jurisdiction and to proceed may result in a decision that the Court lacked subject matter jurisdiction.  Consequently, the best course of action is to certify this order for an interlocutory appeal so that the Second Circuit might resolve the salient issue.

**C.**     **Defendant's Cross-Motion to Dismiss and for Costs**

In its cross-motion to dismiss the third and fourth causes of action, Defendants do not raise any arguments as to why the claims should fail on their merits under Rule 12(b)(6) or any other rule of the Federal Rules of Civil Procedure.  Rather, without any citation to authority, the Fund argues that the claims should be dismissed with prejudice because Montefiore had no "good faith basis" for bringing the claims.  The cross-motion falls short of making any claim for sanctions under Rule 11, and does not provide any other basis on which the Court should grant the motion.  Moreover, as the Court already has granted Montefiore's motion to voluntarily withdraw the third and fourth causes of action, the motion to dismiss those very same claims is moot.  To the extent the Fund moves for costs, it again provides no authority or reasons why it should be granted costs in this case.  Accordingly, Defendants' cross-motion is denied in its entirety.

### III. CONCLUSION

For the foregoing reasons, Montefiore's motion to withdraw its third and fourth causes of action is GRANTED. Montefiore's motion to remand is DENIED. Defendants' motion to dismiss and for costs is DENIED as moot. Pursuant to 28 U.S.C. § 1292(b), this Court certifies this action for interlocutory appeal because the ERISA preemption question addressed herein involves controlling issues of law as to which there is substantial ground for a difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. This action shall be stayed pending the outcome of such appeal. If no application is made to the United States Court of Appeals for the Second Circuit to accept the interlocutory appeal within the ten (10) days set forth in § 1292(b), or if the Second Circuit should deny any such application, the stay shall be automatically lifted and this action shall proceed in the ordinary course, including with a pretrial conference to be scheduled by the parties by calling Chambers. The Clerk of the Court is instructed to close the motions resolved herein (Docket Nos. 7 and 11).

**IT IS SO ORDERED.**
**New York, New York**
**November 11, 2009**

_____
U.S.D.J.