UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/19/19

MONTEFIORE MEDICAL CENTER,

                Plaintiff,

    v.

LOCAL 272 WELFARE FUND, *et al.*,

                Defendants.

No. 09-CV-3096 (RA)(SN)

MONTEFIORE MEDICAL CENTER,

                Plaintiff,

    v.

LOCAL 272 WELFARE FUND, *et al.*,

                Defendants.

No. 14-CV-10229 (RA)(SN)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

       Plaintiff Montefiore Medical Center ("Montefiore") filed two actions, in 2009 (the "First Action") and in 2014 (the "Second Action"), against Defendants Local 272 Welfare Fund (the "Fund") and its manager, Marc Goodman.[1] In both cases, Montefiore sought payment for medical services that it provided to the Fund's participants. The Court has resolved the parties' disputes through numerous decisions issued over the past decade.

       Montefiore now seeks an award of attorneys' fees for claims that it litigated in the First and Second Actions that were governed by the Employee Retirement Income Securities Act of

---

[1] Montefiore subsequently filed a third action against the Fund (the "Third Action"), see No. 17-CV-10213 (RA) (SN) (S.D.N.Y.), which is not at issue here.

1974 ("ERISA"). For the following reasons, Montefiore's motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual History

The Fund, a self-insured employee benefit plan, provides medical coverage to its participants. Between 2003 and 2006, the Fund contracted with a preferred provider organization, Horizon Healthcare Services of New York, Inc. ("Horizon"). Horizon provided the Fund access to its participating medical providers, which included Montefiore, a nonprofit hospital in the Bronx, New York.

The Fund's relationship with Horizon ended in 2007. As a result, the Fund contracted with MagnaCare Administrative Services ("MagnaCare"), whose provider network also included Montefiore. A year later, in August 2008, Montefiore terminated the Fund's right to obtain medical services under the MagnaCare contract. After that date, Montefiore was an out-of-network provider to the Fund's participants.

Throughout this period, Montefiore argued that the Fund improperly denied Montefiore's claims for reimbursement. Specifically, Montefiore raised four types of claims: (1) breach of contract claims that arose during the Horizon contract; (2) breach of contract claims that arose during the MagnaCare contract; (3) ERISA claims that arose during the MagnaCare contract; and (4) unjust enrichment claims, or in the alternative, ERISA claims, that arose after the MagnaCare contract was terminated. The First Action concerned all four types of claims; the Second Action concerned only post-MagnaCare ERISA claims.

## II.    Procedural History

### A.    The First Action

Montefiore commenced the First Action on March 11, 2009, in the Supreme Court of the State of New York, Bronx County. Dkt. No. 1.[2] The Fund subsequently removed the case to this Court, asserting that Montefiore's claims were preempted under ERISA. *See id.* On November 12, 2009, Judge Harold Baer, Jr. denied Montefiore's motion to remand. Dkt. No. 16. That decision was affirmed by the Second Circuit in April 2011. *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011).

Judge Baer conducted a two-day bench trial in September 2012. Dkt. No. 36–38. After trial, on December 14, the Fund submitted a letter to the Court stating that the Fund had "paid all claims . . . for services rendered after August 13, 2008, when the Fund was terminated from the MagnaCare network." Dkt. No. 48-2 at 2. The Fund submitted a similar letter on February 7, 2013. Dkt. No. 48-4 at 2. This time, the Fund asserted that it had paid "all claims for services rendered during the period prior to August 13, 2008 . . . except for those claims that were denied for lack of pre-certification." *Id.* Montefiore opposed the Fund's December 14 letter, but it did not respond to the letter submitted in February. *See* Dkt. No. 48-3 at 4.

On June 25, 2013, Judge Baer issued an Opinion and Order dispensing with Montefiore's claims. *See* Dkt. No. 45. Based on the Fund's letters, Judge Baer determined that most of the MagnaCare claims, and all of the post-MagnaCare claims, had been settled. *See id.* at 5–7. Those claims were dismissed, and the remaining two MagnaCare claims, which were analyzed

---

[2] Unless stated otherwise, docket citations refer to the First Action, No. 09-CV-03096 (RA) (SN) (S.D.N.Y.).

under ERISA, were denied on the merits. *See id.* at 9. Montefiore appealed, and on January 21, 2015, the Second Circuit vacated the judgment in its entirety. *See Montefiore Med. Ctr v. Teamsters Local 272*, 589 F. App'x 32 (2d Cir. Jan. 21, 2015). The Second Circuit held that the "District Court's decision to credit one party's assertion that certain claims had been 'settled' was clearly erroneous." *Id.* at 34.

On remand, Magistrate Judge Sarah Netburn issued a Report and Recommendation addressing the majority of Montefiore's claims. Dkt. No. 106. Specifically, Judge Netburn recommended that Montefiore be awarded: (1) $42,698.03 for its breach of contract claims under the Horizon contract; and (2) $641,326 for its breach of contract and ERISA claims under the MagnaCare contract. *Id.* at 25. Because a related decision from the Second Action was pending before the Court of Appeals, the post-MagnaCare claims — which Montefiore had since decided were governed only by ERISA — were held in abeyance. *Id.* at 6; Dkt. No. 83 at 3. On April 3, 2018, this Court adopted Judge Netburn's decision in its entirety. Dkt. No. 111.

**B.    The Second Action**

Montefiore commenced the Second Action on December 31, 2014. No. 14-CV-10229, Dkt. No. 1. The complaint included only post-MagnaCare ERISA claims; that is, ERISA claims that arose after the MagnaCare contract was terminated. *Id.*

The parties cross-moved for summary judgment in the summer of 2016. Interpreting the Fund's Summary Plan Description ("SPD"), Judge Netburn found that, in deciding how much to pay an out-of-network provider, the Fund was required to "determine what it pays its various in-network providers for a particular service" and then select the "maximum, or highest, amount." No. 14-CV-10229, Dkt. No. 68 at 13 (internal quotation marks omitted). As a result, Judge Netburn recommended granting Montefiore's motion for summary judgment. *Id.* at 19–20. The

Court adopted this recommendation in its entirety on March 31, 2017, which was affirmed by the Second Circuit on February 28, 2018. No. 14-CV-10229, Dkt. No. 73; *Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 712 F. App'x 104 (2d Cir. Feb. 28, 2018).

**C.    Consolidated Proceedings**

On May 3, 2018, Judge Netburn directed the parties to file consolidated briefing for all outstanding issues in the First and Second Actions. Dkt. No. 116. Following the appeal in the Second Action, the Fund agreed to pay the majority of the post-MagnaCare ERISA claims from the First Action, which had previously been held in abeyance and were governed by the same analysis. *See* Dkt. No. 127 at 7 & n.3; Dkt. No. 88 at 3–4. Thus, only four issues remained:

> First, whether Montefiore is entitled to reimbursement on six post-MagnaCare ERISA claims: five from the First Action, and one from the Second Action. Second, whether Montefiore is entitled to prejudgment interest on its post-MagnaCare ERISA claims from both the First and the Second Actions. Third, whether Montefiore is entitled to reasonable attorney's fees. And fourth, whether Montefiore properly calculated its prejudgment interest on its breach of contract claims in the First Action.

Dkt. No. 140 at 5.

On January 25, 2019, Judge Netburn issued a Report and Recommendation addressing these issues. *See* Dkt. No. 140. Judge Netburn concluded that three claims from the First Action should be denied because Montefiore did not obtain precertification. *Id.* at 8. However, because emergency room services do not need to be precertified, Judge Netburn determined that Montefiore should be partially reimbursed for the remaining two claims from the First Action, and the only remaining claim from the Second Action. *Id.* at 11, 14. Finally, Judge Netburn recommended that Montefiore should be awarded prejudgment interest on its ERISA claims at the federal prime rate. *Id.* at 19. Because Montefiore had withdrawn its request for attorneys' fees, *see* Dkt. No. 135 at 4, that issue was not addressed in Judge Netburn's decision.

This Court adopted Judge Netburn's Report and Recommendation in its entirety on February 12, 2019. Dkt. No. 141. In doing so, the Court stated that the "cases shall remain open so that Montefiore may renew its application for attorneys' fees incurred in litigating its ERISA claims in these actions." *Id.* at 3. Montefiore filed its motion for attorneys' fees on February 26, 2019 ("Pl.'s Br."), the Fund filed its opposition on April 17, 2019 (Def.'s Br."), and Montefiore filed a reply on May 1, 2019 ("Pl.'s Reply Br.").

The Court now concludes that: (1) Montefiore is entitled to an award of reasonable attorneys' fees and costs for its ERISA claims in the First and Second Actions; and (2) a minor reduction in Montefiore's requested fee is appropriate.

## DISCUSSION

### I.    Attorneys' Fees under ERISA

#### A.    Success on the Merits

Under ERISA, a court "may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). This provision must be "liberally construed to protect the statutory purpose of vindicating retirement rights." *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004) (citations omitted).

To obtain such fees, a party must achieve "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). A claimant does not satisfy this requirement by achieving "trivial success on the merits" or a "purely procedural victory." *Id.* Rather, the court must be able to "fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.'" *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)).

Here, as the Fund does not dispute, Montefiore succeeded on its ERISA claims. The Court granted Montefiore summary judgment in the Second Action, finding that the SPD unambiguously required the Fund to reimburse Montefiore the maximum amount that it would pay an in-network provider for the same service. No. 14-CV-10229, Dkt. No. 68 at 13. This decision was then affirmed by the Second Circuit. *See Montefiore Medical Center*, 712 F. App'x at 106. Although the Court remanded the case to the Fund, it did so only because the parties did not provide a list of in-network rates for the services provided. *See* No. 14-CV-10229, Dkt. No. 68 at 19. The Fund subsequently paid all except one claim at the maximum in-network rate, and even the remaining claim was partially reimbursed for emergency room charges. Dkt. No. 127 at 7; Dkt. No. 140 at 14. This certainly qualifies as "some success on the merits." *Scarangella v. Grp Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013) ("[*Hardt*] clearly held that a remand order opining positively on the merits of the plaintiff's claim was sufficient [to award attorneys' fees].").

A similar analysis applies to the First Action. There, Montefiore ultimately asserted that ERISA governed 31 of its reimbursement claims: 2 MagnaCare claims, and all 29 post-MagnaCare claims.[3] Dkt. No. 41 at 23, 25; Dkt. No. 83 at 2–3. Although Montefiore did not prevail on the former, it achieved great success on the latter.

The Court's summary judgment decision in the Second Action established the reimbursement rate for post-MagnaCare ERISA claims. After this decision was affirmed by the Second Circuit, the Fund agreed to pay all except five of the relevant claims from the First

---

[3] In her February 2018 Report and Recommendation, Judge Netburn concluded that an additional four MagnaCare claims were governed by ERISA. Dkt. No. 106, at 12–13. However, Montefiore argued that these claims were governed by state law, and it does not seek to recover any fees incurred in filing its motion here. Pl.'s Br. at 20.

Action at the maximum in-network rate. Dkt. No. 127 at 7 & n.3. Three of the remaining claims were denied, but two were partially reimbursed for emergency room charges. Dkt. No. 140 at 8, 11. Thus, as a result of its successful litigation in the Second Action, Montefiore obtained a substantial portion of its requested relief under ERISA in the First Action. This is sufficient to obtain an award of attorneys' fees. *See Scarangella,*731 F.3d at 155 (recognizing that "judicial action [that] in some way spur[s] one party to provide another party with relief . . . [can] amount[] to success on the merits").

Accordingly, the Court concludes that Montefiore is entitled to reasonable fees and costs for its ERISA claims in the First and Second Actions.

## B.    The *Chambless* Factors

"Success on the merits" is the sole factor that a court must consider in awarding attorneys' fees under ERISA. *Donachie v. Liberty Life Assurance Co.*, 745 F.3d 41, 46 (2d Cir. 2014). Nevertheless, courts may apply five additional factors in exercising their discretion. *Id.* These factors, known in this Circuit as the *Chambless* factors, are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties positions.

*Id.* (quoting *Hardt*, 560 U.S. at 249 n.1).

The Fund does not mention the *Chambless* factors in its memorandum of law. However, as part of the Declaration of Marc Goodman, the Fund implicitly contends that it may have some difficulty in satisfying an award of attorneys' fees. *See* Dkt. No. 149 ¶ 10 (stating that "the Fund's financial ability to pay an award of attorneys' fees should be evaluated not simply against

its current assets, but in consideration of its low reserves, its future obligations to pay incurred claims, and the risks that it as a self-insured Fund has of non-collection of contributions and large claims."). A brief examination of the *Chambless* factors is therefore appropriate.

First, the Fund violated the plain language of the SPD when it failed to reimburse Montefiore with the maximum in-network rate. Such conduct demonstrates culpability for purposes of the first factor. *See Div. 1181, Amalgamated Transit Union v. N.Y.C. Dep't of Educ.*, No. 13-CV-9112 (PKC), 2018 WL 4757938, at *3 (S.D.N.Y. Oct. 2, 2018) ("Culpability does not require malice, and instead considers conduct that is 'blameable' or 'at fault,' such as the denial of a meritorious benefits application."); *Alfano v. CIGNA Life Ins. Co. of New York*, No. 07-CV-9661 (GEL), 2009 WL 890626, at *1 (S.D.N.Y. Apr. 2, 2009) ("[A] defendant is culpable where it has violated ERISA, thereby depriving plaintiff of his rights under a pension plan and violating a Congressional mandate.") (internal quotation marks omitted). Moreover, in both the First and Second Actions, the Fund disregarded Department of Labor regulations when issuing benefit determinations. Dkt. No. 45 at 8; Dkt. No. 140 at 6–7, 13; 14-CV-10229, Dkt. No. 68 at 9–10. This further underscores the Fund's culpability.

Second, a fee award is appropriate as a matter of deterrence. Awarding attorneys' fees in this case will discourage ERISA plans from ignoring their reimbursement obligations in the future. Third, Montefiore's litigation efforts benefited the Fund's participants as a whole. By forcing the Fund to follow the plain language of the SPD, Montefiore saved the Fund's members thousands of dollars in out-of-network medical expenses. Finally, the relative merits of the parties' positions favor Montefiore. In the First Action, the Second Circuit concluded that the Fund "provide[d] no authority for its novel argument that one side can moot claims . . . by paying an amount of its own choosing." *Montefiore Medical Center*, 589 F. App'x at 34.

Similarly, in the Second Action, the Second Circuit concluded that the SPD unambiguously supported Montefiore's interpretation of the Fund's payment responsibilities. *See Montefiore Medical Center*, 712 F. App'x at 106.

The Fund provides no meaningful argument regarding the *Chambless* factors. Even assuming the Fund is in a fragile financial state — a proposition opposed by Montefiore and previously rejected by this Court, *see Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2019 WL 57145, at *7, *adopted by*, 2019 WL 569805 (S.D.N.Y. Feb. 12, 2019) — the Court concludes that the other factors suggest an award of attorneys' fees is appropriate.

## II.   Montefiore's Application for Fees and Costs

The lodestar — the product of a reasonable hourly rate and the reasonable number of hours required — produces a presumptively reasonable fee. *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011). A "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). To determine this amount, courts rely on the "hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience." *Abdell v. City of New York*, No. 05-CV-8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks omitted). Courts must also consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[4]

---

[4] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill*, 522 F.3d at 186 n.3.

although separate findings as to each factor are unnecessary, *see C.B. v. New York City Dep't of Educ.*, No. 18-CV-7337 (CM), 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (citations omitted).

To determine the reasonable number of hours required to litigate the case, courts must review the attorneys' contemporaneous time records. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015). Any hours that were not "reasonably expended" should be excluded. *Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing Co.*, No. 11-CV-4308 (PGG), 2013 WL 6171660, at *4 (S.D.N.Y. Nov. 25, 2013) (internal quotation marks omitted). This analysis considers "overstaffing, the skill and experience of the attorneys, [and any] redundant, excessive, or unnecessary hours." *Gonzalez*, 112 F. Supp. 3d at 29 (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

Multiplying the reasonable number of hours by the appropriate hourly rate produces the lodestar. *Millea*, 658 F.3d at 166. Although this amount is not conclusive, the court should apply an adjustment only in rare circumstances. *We Shall Overcome Found. v. Richmond Org., Inc.*, 330 F. Supp. 3d 960, 974 (S.D.N.Y. 2018) (citing *Millea*, 658 F.3d at 167).

### A.     Hourly Rate

Montefiore is represented by Garfunkel Wild ("GW"), a medium-sized law firm that specializes in healthcare law. Dkt. No. 143, Declaration of John G. Martin ("Martin Decl.") ¶ 12. Montefiore seeks to recover fees for three partners, four associates, and several paralegals. The Court concludes that Montefiore's proposed hourly rates are reasonable.

John Martin, the lead partner in the First and Second Actions, has approximately 34 years of litigation experience. Martin Decl. ¶ 10. Martin worked for 23 years as a prosecutor in the Office of the New York County District Attorney and the Office of the United States Attorney

for the Eastern District of New York. *Id.* ¶¶ 10–11. Since then, Martin has worked as a civil litigator for more than a decade as a partner at GW. *Id.* ¶ 12. He has litigated numerous healthcare-related cases, including reimbursement disputes, and recently published an article on healthcare litigation in the New York Law Journal. *Id.* Martin charged Montefiore a discounted hourly rate between $383 and $505. *Id.*, Exhibits C & D.

Two other GW partners performed limited work during these cases. Michael Keane has approximately 31 years of experience and is the Co-Chair of the Litigation and Arbitration Group. Martin Decl. ¶ 14. Keane has substantial experience litigating hospital payment issues and payor-provider disputes. *See id.* Debra Silverman, who has been practicing law for approximately 33 years, works on managed care issues and regulatory matters. *Id.* ¶ 15. She is also a frequent lecturer for the Healthcare Financial Management Association. *See id.* Keane's discounted hourly rate ranged from $425 to $518, and Silverman's ranged from $374 to $484. *Id.*, Exhibits C & D.

Montefiore also seeks attorneys' fees on behalf of four associates. Marc Sittenreich has approximately seven years of litigation experience. Martin Decl. ¶ 16. This includes two years with the Health Care Division of the Federal Trade Commission, and four years at GW, where he has litigated payor-provider disputes and other claims under ERISA. *Id.* Sittenreich's discounted billing rate ranged from $246 to $293 per hour. *Id.*, Exhibits C & D.

Alicia Wilson, another associate, worked on the First Action in 2012 and 2013. Martin Decl. ¶ 17. At that time, she had approximately seven years of experience practicing healthcare-related litigation. *Id.* Courtney Rogers, who worked on the First Action in 2013, had approximately eight years of relevant experience. *Id.* ¶ 18. Wilson's discounted hourly rate ranged between $255 and $300, and Rogers's ranged from $259 to $315. *Id.*, Exhibits C & D.

Lastly, Dayna Tann, a junior associate, worked on the First Action in 2011 and 2012. Martin Decl. ¶ 19. At that time, she had approximately one-to-two years of experience practicing health care-related litigation. *Id.* Her discounted billing rate was between $170 and $178 per hour. *Id.*, Exhibits C & D.

Montefiore argues that GW's discounted rates should be used to calculate the lodestar. The Court agrees. The actual billing arrangement provides a "strong indication of what private parties believe is the reasonable fee to be awarded." *Crescent Publ'g Grp., Inc. v. Playboy Enter.*, 246 F.3d 142, 151 (2d Cir. 2001) (internal quotation marks omitted). Here, Montefiore has paid GW's bills in full, except for those submitted in connection with this fee application. Pl.'s Br. at 18. This suggests that Montefiore's requested hourly rates are reasonable. *See Triumph Constr. Corp. v. New York City Council of Carpenters Pension Fund*, No. 12-CV-8297 (KPF), 2014 WL 6879851, at *4 (S.D.N.Y. Dec. 8, 2014) ("That the fees requested equal the amount actually billed to Respondents is a strong indicator that those fees are reasonable.").

Furthermore, the discounted rates are typical of those charged by attorneys with commensurate skill and experience in this District. Martin, Keane, and Silverman, the three partners who worked on the First and Second Actions, each have over thirty years of experience. Their discounted billing rates — which never exceeded $525 per hour and were often quite lower — are consistent with awards in similar cases. *See, e.g., Dimopoulou v. First Unum Life Ins. Co.*, No. 13-CV-7159 (ALC), 2017 WL 464430, at *3 (S.D.N.Y. Feb. 3, 2017) (awarding $660 per hour to a partner with 25 years of ERISA experience); *Doe v. Unum Life Ins. Co. of Am.*, No. 12-CV-9327 (LAK) (AJP), 2016 WL 335867, at *5 (S.D.N.Y. Jan. 28, 2016), *adopted by*, 2016 WL 749886 (Feb. 23, 2016) (awarding $600 per hour to a partner with 33 years of experience, 20 of which focused on ERISA); *Wallace v. Grp. Long Term Disability Plan for Employees of*

*TDAmeritrade Holding Corp.*, No. 13-CV-6759 (LGS), 2015 WL 4750763, at *6 (S.D.N.Y. Aug. 11, 2015) (awarding $450 per hour to a partner with 34 years of experience).

The same holds true for GW's associates. Sittenreich, Wilson, and Rogers had between six and eight years of experience during the relevant period, and Tann, a junior associate, had between one-to-two years. These attorneys all had substantial familiarity with healthcare-related litigation. When determining a party's lodestar, courts in this District frequently award "$300 per hour for senior associates with at least eight years of experience," and "in the range of $125–215 to associates with three years of experience or less." *Thor 725 8th Avenue LLC v. Goonetilleke*, No. 14-CV-4968 (PAE), 2015 WL 8784211, at *11 (S.D.N.Y. Dec. 15, 2015) (citations omitted); *accord Dimopoulou*, 2017 WL 464430, at *3 ("[T]he range of awarded rates for associates with approximately five years of experience has been between $250 and $350."). GW billed its mid-level associates between $246 and $315 per hour, and its junior associate between $170 and $178 per hour. Montefiore's requested rates are therefore reasonable when compared with awards with similarly-experienced attorneys.

Finally, Montefiore seeks hourly rates between $166 and $204 for GW's paralegals. Although on the higher side of what is typically awarded, the Court does not believe a reduction is necessary here. Montefiore has already paid these charges in full, and a $200 hourly rate for paralegals is not uncommon in this District. *See Sprint Commc'ns Co. v. Chong*, No. 13-CV-3846 (RA) (SN), 2014 WL 6611484, at *8 (S.D.N.Y. July 14, 2014), *adopted by*, (Nov. 21, 2014) (collecting cases); *accord Therapy Prods., Inc. v. Bissoon*, No. 07-CV-8696 (DLC), 2010 WL 2404317, at *5 (S.D.N.Y. Mar. 31, 2010), *adopted by*, 2010 WL 2541235 (June 15, 2015); *Dimopoulou*, 2017 WL 464430, at *3 (approving hourly rates between $125 and $190 per hour for paralegals in an ERISA case).

The Fund's argument that Montefiore's proposed hourly rates are excessive is unavailing. The cases cited by the Fund involve petitions to confirm an arbitration award, or default judgments where the defendant never appeared. *See, e.g., Tr. of the New York City Dist. Council of Carpenters Pension Fund v. Onyx Glass & Metal Corp.*, No. 14-CV-7333 (PAE), 2015 WL 5144120, at *2–3 (S.D.N.Y. Sept 1, 2015). Although one case proceeded to summary judgment, the defendant conceded liability, and the plaintiff was unsuccessful in litigating damages. *See Verdier v. Thalle Constr. Co.*, No. 14-CV-4436 (NSR) (LMS), 2017 WL 8029054, at *1 (S.D.N.Y. Aug. 3, 2017). In this case, however, Montefiore has engaged in nearly a decade of litigation, including a bench trial, multiple dispositive motions, and two appeals. Moreover, as discussed above, Montefiore largely succeeded on its ERISA claims, obtaining significant money damages as a result.

Given the amount recovered and the contested nature of the litigation — as well as the fact that the requested rates were actually paid and are typical of those charged by attorneys with similar skill and experience — the Court concludes that the discounted rates are reasonable and should not be reduced.

## B.    Contemporaneous Time Records

Absent unusual circumstances, attorneys are required to submit contemporaneous time records with their fee applications. *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010). The records should specify, for each attorney, the date, the hours expended, and the nature of the work performed. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

Here, Montefiore submitted legal bills that it received from GW on a monthly basis. Martin Decl., Exhibits C & D. The bills include the dates, the number of hours, and the work

15

performed by each GW attorney and paralegal. *Id.* Although the bills themselves were created after-the-fact, they were generated entirely from electronic time entries logged daily on Carpe Diem, a legal tracking software. Dkt. No. 150, Reply Affidavit of John G. Martin ("Martin Reply Aff.") ¶ 10. Under GW policy, attorneys are required to record the number of hours they spend on a client matter, along with a description of the work performed, on a daily basis. *Id.*

The Fund contends that Montefiore's legal bills are insufficient to justify an award of attorneys' fees because these bills were reconstructed. *See* Def.'s Br. at 8–9. The Court disagrees.

First, reconstructed documents can be used to support a fee application so long as the attorney "made contemporaneous entries as the work was completed," and the documents are "based on th[ose] contemporaneous records." *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) (quoting *Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). That is exactly what happened here. Pursuant to firm policy, GW made daily entries describing the work performed in the First and Second Actions. The legal bills submitted to the Court were populated entirely from these entries. Accordingly, Montefiore has satisfied the requirements under *Carey* and its progeny.

Second, the cases cited by the Fund in support of its position are inapposite. In *RLS Associates*, for example, the attorney "fail[ed] entirely" to show that his billing records were "based upon" or "a reconstruction of contemporaneous time records." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01-CV-1290 (CSH), 2002 WL 1285359, at *2 (S.D.N.Y. June 10, 2002). Here, Montefiore provided a sworn declaration explaining how GW attorneys record their time, and how that information is used to populate GW's legal bills. This is sufficient to obtain an award of attorneys' fees. *See Tr. of Empire State Carpenters Annuity, Apprenticeship,*

*Labor-Mgmt. Coop. v. Dipizio Constr.*, No. 15-CV-2592, 2016 WL 3033722, at *6 (E.D.N.Y. May 25, 2016) (relying on an attorney's declaration to conclude that billing information was entered contemporaneously); *RLS Associates*, 2002 WL 1285359, at *2 (requiring attorney to submit an "affidavit describing the firm's record-keeping and billing procedures").

## C. Hours Expended

### 1. Montefiore's Self-Imposed Reductions

Montefiore acknowledges that certain fees and costs from the First and Second Actions are not compensable. In April 2011, the Second Circuit held that several of Montefiore's claims were preempted by ERISA. *Montefiore Med. Ctr.*, 642 F.3d at 332. Because Montefiore had argued that its claims were governed by state law, it does not seek any fees for work performed before the Second Circuit's decision. Martin Decl. ¶ 23.

After amending its complaint, Montefiore contends that the First Action consisted of an approximately equal number of ERISA claims and contract claims. Martin Decl. ¶ 24. As such, Montefiore seeks to recover 50% of the fees spent litigating the First Action up to and including the bench trial before Judge Baer.[5] *Id.* Montefiore makes a similar concession regarding its August 2017 motion for judgment. *Id.* ¶ 30. Because the post-MagnaCare ERISA claims were held in abeyance, Montefiore does not seek any fees in connection with its motion. *Id.*

The Second Action, in contrast, consisted exclusively of post-MagnaCare ERISA claims. Because the entire litigation was governed by ERISA, Montefiore seeks 100% of the fees that it

---

[5] Following the trial, Montefiore appealed Judge Baer's decision that most of the MagnaCare claims, and all of the post-MagnaCare claims, had been settled. Dkt. No. 45, at 5–7. Because the appellate arguments were identical for both the contract claims and the ERISA claims, Montefiore seeks 100% of its fees in connection with the appeal. Martin Decl. ¶ 26.

incurred in litigating the case through summary judgment and appeal. Martin Decl. ¶ 28. The only exception concerns the Fund's partial motion to dismiss. Because that motion was decided in the Fund's favor, Montefiore does not seek any of its corresponding fees or expenses. *Id.* ¶ 29 n.4.

In May 2018, Judge Netburn directed the parties to file consolidated briefing for all outstanding issues in the First and Second Actions. Dkt. No. 116. Montefiore moved for judgment on six post-MagnaCare ERISA claims. Nevertheless, it included other non-ERISA issues in its briefing, and the Court denied portions of its requested relief under ERISA. Montefiore therefore seeks to recover only 50% of its fees litigating the motion. Martin Decl. ¶ 31.

Finally, Montefiore seeks 100% of the fees incurred while preparing this motion. Martin Reply Aff. ¶¶ 21–23. The legal bills documenting the relevant fees are contained in Exhibits A and B of the Martin Reply Affidavit. *Id.* In addition, Montefiore also requests compensation for 10.2 hours logged on the day it submitted its reply. *Id.* ¶ 24. Although Montefiore does not include a legal bill documenting these hours, Martin describes the work performed and the relevant hourly rate in sufficient detail in his declaration. *Id.* ¶¶ 25–26. Accordingly, these hours should be included in Montefiore's fee award. *See Lopalo*, 767 F.3d at 149 (quoting *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991)).

Montefiore's proposed reductions are sufficient to ensure that it is compensated only for time spent litigating ERISA claims. Thus, with one exception, the Court will apply the reductions when calculating Montefiore's fee request. The exception concerns the fees incurred up to and including the trial in the First Action. For this period, the Court finds that a greater reduction is warranted.

At the time of trial, Montefiore argued that: (a) 10 claims were governed by the Horizon contract; (b) 18 claims were governed by the MagnaCare contract; (c) 2 claims, despite arising during the MagnaCare contract, were governed by ERISA; and (d) 29 post-MagnaCare claims were governed by state law, and *in the alternative*, by ERISA. Dkt. No. 41 at 15, 22–23, 26, 28. Although Montefiore eventually decided to bring its post-MagnaCare claims only under ERISA, it did not make this decision until well after trial. *See* Dkt. No. 83 at 3. As a result, Montefiore incurred fees litigating the post-termination claims under state law, which cannot be recovered in a fee motion under ERISA. *See, e.g.*, Dkt. No. 40 at 7–10 (arguing that the Fund was unjustly enriched by failing to pay for post-MagnaCare admissions).

The Court concludes that a 75% reduction is more appropriate for fees incurred up to and including the trial in the First Action. The Court will apply Montefiore's other reductions as proposed.

### 2. Other Unreasonable or Unnecessary Hours

The Fund contends that Montefiore's billing records are "awash with vague, block-billed, and erroneous entries that warrant no reimbursement." Def.'s Br. at 11. The Court agrees, but only to a limited extent. Accordingly, the Court will apply a small percentage reduction to Montefiore's fee request.

### i. Vague Charges

Courts may reduce an attorney's requested fees when the billing entries are vague and do not sufficiently demonstrate what counsel did. *See Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (citations omitted). A billing entry is vague if it "lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010)

(internal quotation marks omitted). When this occurs, a percentage reduction is appropriate. *Changxing Li v. Kai Xiang Dong*, No. 15-CV-7554 (GBD) (AJP), 2017 WL 892611, at *20 (S.D.N.Y. Mar. 7, 2017), *adopted by*, 2017 WL 1194733 (Mar. 31, 2017) (collecting cases).

Here, GW's invoices contain a number of overly-generalized billing entries. *See, e.g.,* Martin Decl., Exhibit C, at 38 ("OVERVIEW OF MONTEFIORE/MAGNACARE UNION CLAIMS AND STATUS OF DISCOVERY). The invoices also include numerous conferences or calls without identifying the subject matter of the work performed. *See id.* at 60, 88, 101. This prevents the Court from determining the reasonableness of the amount charged and therefore requires at least a minimal reduction in fees. *See Tucker v. City of New York*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (finding that time entries stating a "'conference with' or 'call to' a specified person" were impermissibly vague).

### ii. Block-Billed Charges

Block-billing occurs when an attorney groups multiple tasks into a single billing entry. *See Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. June 3, 2015). This type of billing is permissible, but only when the records "allow the court to conduct a meaningful review of the hours requested." *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017) (citing *Merck Eprova AG v. Gnosis S.P.A.*, 760 F.3d 247, 266 (2d Cir. 2014)). In general, block-billing is problematic in three circumstances: first, where "large amounts of time (*e.g.,* five hours or more) are block billed," *Beastie Boys v. Monster Energy Co.,* 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015); second, where "there [is] evidence that the hours billed were independently unreasonable," *Hnot v. Willis Grp. Holdings, Ltd.*, No. 01-CV-6558 (GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008); and third, where "[the fee applicant] has combined activities compensable at different rates."

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 441 (S.D.N.Y. 2012) (citing *Hnot*, 2008 WL 1166309, at *6).

The Fund contends that GW's block-billing warrants a 90% reduction in fees. Def.'s Br. at 15. This argument is unpersuasive. Many of the block-billed entries contain fewer than six hours of work. *See, e.g.*, Martin Decl., Exhibit C, at 23–24, 38–40, 123–24, 157–59, 247–48, 291–92. In addition, for some of the longer entries, GW provided sufficient detail so as to afford reasonable confidence that the time billed was spent productively. For example, time spent drafting dispositive motions was often organized in a block-billed format. *See id.* at 128, 154– 55, 183–84, 190, 209, 233, 237, 244, 280. Because the entries "encompass[] a series of related tasks" and "sufficiently enumerate[] the work completed," no significant reduction is warranted. *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) (collecting cases).

Nevertheless, other portions of GW's legal bills are more concerning. During discovery in the First Action, GW occasionally combined more than six hours of work on multiple tasks into a single time entry, without specifying the time on each task. Martin Decl., Exhibit C, at 40, 60, 62, 68. Unlike the entries cited above, the tasks are not so related that the Court can determine whether the hours were reasonably expended. Similar problems arise with GW's trial preparation, which included several entries for ten hours or more. *Id.* at 84–85, 88–89, 93, 105. In addition, the Fund correctly points out that Martin's travel time is often block-billed. *Id.* at 23, 45, 60, 62, 69, 91, 193. Because courts regularly reduce attorneys' fees by 50% for travel time, it is not appropriate to include these fees with activities that are fully compensable. *See Robinson v. City of New York*, No. 05-CV-9545 (GEL), 2009 WL 3109846, at *6 (S.D.N.Y. Sept. 29, 2009). Accordingly, GW's block-billing warrants a reduction in the requested fee.

### iii. Charges for Clerical Work

Clerical work is part of a firm's overhead and cannot be included in a request for attorneys' fees. *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 368 (S.D.N.Y. 2018). Clerical tasks include, among other things, downloading, scanning, copying, and organizing files. *Siegel v. Bloomberg LP*, No. 13-CV-1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016).

Here, it appears that three of GW's paralegals performed exclusively clerical work. Ellen H. Huggler and James C. Dunne organized documents, and Jennifer Ruzicka assisted in assembling binders. Martin Decl., Exhibit C, at 89 (Huggler); 92 (Ruzicka); 93–94 (Dunne). These entries, which total 11.2 hours, must thus be excluded from Montefiore's fee award. Although GW's legal bills include other billing entries for clerical work, the Court cannot determine the exact number of hours expended because the entries are often block-billed. *See id.* at 24, 34, 61 (scanning); 50, 60, 90 (copying); 93, 247 (organizing). Accordingly, an additional percentage reduction is appropriate. *See McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, No. 99-CV-9054 (NRB), 2002 WL 1974054, at *3 (S.D.N.Y. Aug. 27, 2002) (reducing hours sought by 5% to account for time spent on clerical services).

### iv. Appropriate Percentage Reduction

Courts may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Carey*, 711 F.2d at 1146). Fee reductions around 30% are common in this District to reflect considerations of whether work performed was necessary, leanly staffed, or properly billed. *See Beastie Boys*, 112 F. Supp. 3d at 57; *accord Genger v. Genger*, No. 14-CV-5683, 2015 WL

1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("Across-the-board reductions in the range of 15% to 30% are appropriate when block billing is employed.").

Based on the billing deficiencies identified above, the Court will reduce Montefiore's proposed hours by 20%. This reduction ensures that Montefiore does not recover for clerical work, improper block-billing, and vague billing entries. In addition, the Court's determination also accounts for other unreasonably expended hours. This includes, among other things, charges for unrelated activities (such as meetings with the Department of Labor or work performed exclusively on the Third Action), charges for overstaffed or duplicative work (such as spending over 60 hours drafting a reply brief on appeal and over 46 hours drafting the reply brief for this motion), and charges for requests for extensions of time, which typically are not compensated in this District. *See* Martin Decl., Exhibit C, at 62, 119 (DOL); 183–84 (appellate reply brief); *id.*, Exhibit D, at 6, 11, 44 (Third Action); Martin Reply Aff. ¶ 22 (fees reply brief).

The Fund's arguments for a greater reduction are unavailing. For example, the Fund contends that it cannot determine which charges were included in Montefiore's fee request because several legal bills are partially redacted. *See* Def.'s Br. at 12–13. Montefiore makes clear, however, that all of the redacted charges were excluded from its calculations. *See* Martin Decl. ¶ 8; Martin Reply Aff. ¶¶ 17–19. This position is confirmed by the detailed spreadsheets submitted with Montefiore's reply. *See* Martin Reply Decl., Exhibit C. Accordingly, no reduction is warranted.

The Fund also points out that GW used the same two billing numbers for the First, Second, and Third Actions. Def.'s Br. at 16–17. Although true, this does not suggest that Montefiore's fee award should be reduced. Montefiore excluded most of the charges related to the Third Action, and the Court has considered any remaining time spent on the Third Action in

imposing the 20% reduction. *See* Martin Reply Aff. ¶ 18. Similarly, to account for time spent on the state law claims in the First Action, the Court has imposed a 75% reduction in the work performed up to and including the trial before Judge Baer. The Court sees no reason to reduce Montefiore's fee award any further.

Finally, the cases cited by the Fund are distinguishable. Although courts in this District have imposed reductions as high as 90%, those cases involved far more serious billing defects than those present here. *See, e.g., Pasini v. Godiva Chocolatier, Inc.*, 764 F. App'x 94, 95 (2d Cir. Apr. 10, 2019) (reasoning that the attorney "grossly inflat[ed] the number of hours worked, such as billing over . . . one-third of the total hours . . . for work on [his] fee application"); *Guardians Ass'n of Police Dep't of New York v. City of New York*, 133 F. App'x 785, 786 (2d Cir. June 3, 2005) (upholding an 80% reduction of 314 billable hours where the litigation was simple and the attorneys' time records were "seriously deficient"); *Lewis v. Roosevelt Island Operating Corp.*, No. 16-CV-03071 (ALC) (SN), 2018 WL 4666070, at *7–9 (S.D.N.Y. Sept., 28, 2018) (imposing a 60% reduction where the plaintiff billed 3,229 hours for a case that involved eight depositions and did not go to trial).

### D. Costs

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Kindle v. Dejana*, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). The fee applicant bears the burden of adequately documenting and itemizing the costs requested. *Pennacchio v. Powers*, No. 05-CV-985 (RRM) (RML), 2011 WL 2945825, at *1 (E.D.N.Y. July 21, 2011). In particular, the moving party must substantiate its request with extrinsic proof, such as invoices or receipts. *Lee v. Santiago*, No. 12-CV-2558

(PAE) (DF), 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013). A declaration under penalty of perjury that certain amounts were expended on particular costs may also be sufficient. *Id.*

Here, Montefiore should be awarded the costs it incurred in litigating its ERISA claims in the First and Second Actions. Montefiore detailed its costs in the monthly legal bills that were filed with the Court. Additionally, as part of its reply, Montefiore provided "cost detail reports" that show all of the requested costs have been fully paid. Dkt. No. 151, Declaration of Thom Capobianco ("Capobianco Decl.") ¶ 11 & Exhibits D & E. This is more than sufficient to justify Montefiore's request.

Lastly, the Fund claims that several of Montefiore's photocopying charges are excessive. Def.'s Br. at 10. Given the duration and scope of these litigations — and given that Montefiore has already paid the expenses in their entirety — the Court finds that GW's photocopying was reasonable. That said, as Montefiore admits, a small number of costs are irrelevant to the First and Second Actions. Accordingly, the $13.09 charged for a FedEx transaction to George Sikes cannot be recovered. Martin Decl., Exhibit C, at 195.

## CONCLUSION

Montefiore's motion for attorneys' fees and costs is GRANTED in part and DENIED in part. Specifically, the Court (1) approves the hourly rates proposed by Montefiore; (2) applies a 75% reduction for fees and costs incurred up to and including the trial in the First Action, but otherwise adopts Montefiore's reductions as proposed; (3) excludes 11.2 hours billed by three of GW's paralegals; (4) imposes an additional 20% reduction on the total number of hours expended; and (5) removes $13.09 in costs. Within seven days of the date of this Opinion & Order, Montefiore is directed to submit a proposed judgment consistent with this ruling for the Court's consideration.

The Clerk of the Court is respectfully directed to terminate the motions at Docket Nos. 142 (09-CV-3096) and 105 (14-CV-10229).

SO ORDERED.

Dated:  September 19, 2019
        New York, New York

Ronnie Abrams
United States District Judge